**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

ANDREW BROUGHTON,                       §
                                        §
                Plaintiff,              §
                                        §
*versus*                                §          CIVIL ACTION NO. 9:08-CV-175
                                        §
LIVINGSTON INDEPENDENT SCHOOL           §
DISTRICT, NIKKI WILSON, and             §
iTEACH CORPORATION, INC.,               §
                                        §
                Defendants.             §

## MEMORANDUM AND ORDER

Pending before the court is Defendant iTeach Corporation, Inc.'s ("ITT") Motion for Summary Judgment (#32). ITT moves for summary judgment on Plaintiff Andrew Broughton's ("Broughton") claims alleging causes of action under 42 U.S.C. § 1983, tortious interference with prospective business relations, and injurious falsehoods. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment is warranted.

I.      Background

On July 7, 2006, Defendant Livingston Independent School District ("LISD") hired Broughton as a teacher and coach at Livingston High School under a one-year probationary contract for the 2006-2007 school year. Broughton was not certified by the State of Texas as a public school teacher; therefore, LISD requested that he show proof of enrollment in an alternative certification program as required by the State Board for Educator Certification ("SBEC").

On July 16, 2006, Broughton contracted with an alternative certification program, iteachU.S., Inc., a private corporation doing business as iteachTEXAS, Inc.[1] ITT is an online teacher certification course that provides instruction, observation, preparation for testing, and recommendations to SBEC for certification of candidates who successfully complete its program. Although ITT is approved by SBEC to provide alternative certification preparation, teacher certifications are issued by SBEC. As part of its program, ITT provided instructional courses to Broughton and periodically sent a representative to observe and evaluate his classroom performance.

In January 2007, a female student accused Broughton of physical misconduct. Accordingly, LISD placed Broughton on administrative leave while it investigated the student's allegations of improper touching and communication. Broughton subsequently contacted Anna Gail Sewell ("Sewell"), an ITT supervisor assigned to observe Broughton, via e-mail and informed her that he had "been placed on administrative leave, due to false allegations made by a student." Sewell advised him that she was required to notify ITT of this information.

In a letter to Broughton dated February 1, 2007, Mike Brooks ("Brooks"), the Human Resources Director for LISD, informed Broughton that the superintendent had authorized his termination:

> I have concluded, considering the number and severity of these statements, that you have not created a positive learning environment for the students entrusted in your care at the High School and have, through improper communication and action, helped promote a negative climate whereby students do not feel safe or comfortable to learn.

---

[1] On December 19, 2007, iteachTEXAS, Inc. changed its name to iteachU.S., Inc. iteachU.S., Inc. contends that it is erroneously referred to as iTeach Corporation, Inc. in these proceedings. To avoid confusion, the court will refer to Defendant as "ITT."

Accordingly, the Superintendent has authorized me to pursue termination of your employment with the school district. Final determination of your employment will be made by the Livingston Board of Education.

Broughton contends that, although the allegations lacked merit, he agreed to request personal leave for the remainder of the school year and not to seek renewal of his contract in exchange for LISD's agreement that, in the future, it would not provide any information surrounding the circumstances of his departure to prospective employers. Broughton and LISD further agreed that Broughton would no longer be allowed to teach or coach at LISD, but he would be paid through the remainder of his 2006-2007 contract. On February 15, 2007, Broughton submitted a letter to Brooks stating, "Conditioned on my continued employment with all benefits through the remainder of the term of the Contract, I hereby give Livingston Independent School District notice that I will not be seeking renewal of the Contract for the subsequent school year (2007-2008)."

In a letter dated February 12, 2007, ITT advised Broughton that he had been placed on inactive status. The letter states, "When a resignation from a district such as yours occurs, iteachTEXAS determines that the classroom is not the best career placement for the candidate." Broughton alleges that he later ended his contract with ITT and enrolled in a different certification preparation program.

On or about July 23, 2007, Fort Bend Independent School District ("FBISD") hired Broughton as a teacher and coach at Dulles High School under a one-year probationary contract. Joel Trevino, the Director of Personnel for FBISD, subsequently notified Broughton on August 8, 2007, that he was not to report to work at the beginning of the school year. Broughton learned that he had been placed on administrative leave because FBISD suspected that he had provided false information on his employment application. Specifically, FBISD faulted Broughton for

stating that he had never been asked to resign a teaching position, had never resigned in lieu of termination, and had never been suspended from any position. Broughton allegedly discovered that LISD had provided FBISD with information surrounding the circumstances of his departure and the student's accusations. According to Broughton, Nikki Wilson ("Wilson"), the Human Resources Director for LISD, read Broughton's personnel file to Trevino, including Brooks's letter dated February 1, 2007.[2] Broughton contends that, when asked whether the allegations against Broughton were true, Wilson responded, "of course." Additionally, he asserts that Wilson informed Trevino that Broughton was enrolled in ITT's program, which allegedly prompted Trevino to contact ITT for further information.

In a letter dated September 10, 2007, FBISD informed Broughton that a recommendation of termination would be made to the FBISD Board of Trustees. The letter outlined the reasons for the decision, which was based primarily on the belief that Broughton had provided false information on his employment application. Additionally, FBISD stated that it had received a copy of the February 12, 2007, letter from ITT regarding his placement on inactive status due to his resignation and its determination that the classroom was not the best career placement for him. FBISD terminated Broughton's employment contract in late September 2007.

On September 21, 2008, Broughton filed the instant action against Defendants LISD, ITT, Texas Education Agency ("TEA"), SBEC, Robert Scott ("Scott"), Darrel D. Myers ("Myers"), and Wilson, alleging that they had deprived him of "various constitutionally protected property

---

[2] Wilson replaced Brooks as the Director of Human Resources for LISD.

and liberty interests without due process of law, procedural or substantive."[3]  Broughton further asserts that ITT tortiously interfered with his prospective relations with public school districts and engaged in the continuing publication of "injurious falsehoods" about his "professional competencies."  On November 11, 2008, ITT filed a motion to dismiss for failure to state a claim and a motion for judgment on the pleadings, seeking to dismiss all of Broughton's claims.  In a Memorandum and Order dated June 11, 2009, United States District Judge Thad Heartfield dismissed Broughton's defamation claim and his § 1983 claim premised on the joint action test.[4]  Accordingly, the court ruled that Broughton had pleaded sufficient facts to state facially plausible claims for tortious interference, business disparagement, and violation of § 1983 based on a nexus or public function theory of liability.

On December 7, 2009, ITT filed the instant motion seeking summary judgment on Broughton's remaining claims, arguing that there is no evidence to support liability under § 1983, business disparagement, or tortious interference with prospective business relations.  Thereafter, on December 18, 2009, the instant action was transferred to the undersigned judge.  Broughton filed his Response to the motion on June 28, 2010.

---

[3] Since the filing of this action, Defendants TEA, SBEC, Scott, and Myers have been dismissed as parties.

[4] Judge Heartfield explained that "[d]amage to the reputation or loss of particular employment as a result of an injurious falsehood is properly considered in a defamation or business disparagement cause of action."  *Moore v. Big Picture Co.*, 828 F.2d 270, 275 (5th Cir. 1987).  Although Judge Heartfield found that Broughton's defamation claim was barred by limitations, the court ruled that Broughton could pursue a claim for "injurious falsehoods" under a business disparagement cause of action.

II.  Analysis

A.  Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

"A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005); *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. American Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454. The moving party, however,

need not negate the elements of the nonmovant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009); *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith*, 391 F.3d at 624; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003); *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, 540 U.S. 815 (2003). The evidence is construed "'in favor of the

nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).

Furthermore, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007); *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541; *accord Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B.     Violation of Section 1983

In his Original Complaint, Broughton asserts that "Defendants, official and individual, acting under color of state law, and in civil conspiracy acting together have deprived Broughton of various constitutionally protected property and liberty interests without due process of law, procedural or substantive." He contends that the defendants have prevented Broughton "from obtaining gainful employment as a school teacher or instructor/coach of children in any instructional capacity with children." Although Broughton's complaint fails to specify the statute under which he is pursuing his claim, Judge Heartfield previously found that "Broughton makes clear in his response to the motion [to dismiss] that his 'Complaint alleges that Defendant [ITT] is liable under 42 U.S.C. § 1983.'" Judge Heartfield further noted that "Broughton argues that ITT should be found to have acted under color of state law under three of these tests: public function, nexus and joint action." The court dismissed Broughton's claim under the joint action test, but determined that he could pursue his § 1983 claim under the public function or nexus test.

The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law. *See Inyo Cnty. v. Paiute-Shoshone Indians of the Bishop Cmty.*, 538 U.S. 701, 708 (2003); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994); *Stotter v. University of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007); *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005): It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Southwestern Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879-80 (5th Cir. 2004); *Felton v. Polles*, 315 F.3d 470, 479 (5th Cir. 2002).

There are three elements to establish liability in a § 1983 action. *See Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citing *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986)). To prevail, the plaintiff must show "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Id.*; *see American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Priester v. Lowndes Cnty.*,

354 F.3d 414, 420 (5th Cir.), *cert. denied*, 543 U.S. 829 (2004). A § 1983 complainant must support his claim with specific facts and may not simply rely on conclusory allegations. *See Priester*, 354 F.3d at 420; *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

Here, Broughton alleges that by preventing him "from obtaining gainful employment as a school teacher or instructor/coach of children in any instructional capacity with children," ITT violated the Fourteenth Amendment to the United States Constitution. Specifically, he contends that ITT "was acting under the color of law, when it deprived [sic] published and reported false information about the Plaintiff, and deprived him of his constitutionally protected liberty and property interests and deprived him of due process and equal protection in that Plaintiff can no longer pursuing [sic] gainful employment as a teacher or coach of children in this state or any other." Hence, the issue addressed by both parties is whether ITT's actions as a private entity may be fairly attributable to the State so as to subject it to the constraints of the Fourteenth Amendment.[5]

The determination of the existence of state action under § 1983 is an issue of law to be determined by the court. *See Jennings v. Patterson*, 488 F.2d 436, 438 (5th Cir. 1974); *Paz v. Weir*, 137 F. Supp. 2d 782, 801 (S.D. Tex. 2001); *but see Farrar v. Hobby*, 506 U.S. 103, 106 (1992) (submitting color of state law issue to jury); *Hand v. Gary*, 838 F.2d 1420, 1423 n.2 (5th Cir. 1988) (asking jury to determine whether defendants acted under color of state law). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the

---

[5] "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

wrongdoer is clothed with the authority of state law.'"  *West v. Atkins*, 487 U.S. 42, 49 (1988)

(quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).  The Supreme Court has utilized

a two-prong approach to assess the existence of state action:

> First, the deprivation must be caused by the exercise of some right or privilege
> created by the State or by a rule of conduct imposed by the State or by a person for
> whom the State is responsible. . . .  Second, the party charged with the deprivation
> must be a person who may fairly be said to be a state actor.  This may be because
> he is a state official, because he has acted together with or has obtained significant
> aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *accord Flagg Bros., Inc. v. Brooks*, 436

U.S. 149, 155 (1978); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Bass v.

Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999).  Like the state action requirement of the

Fourteenth Amendment, the state action element of § 1983 excludes from its coverage "merely

private conduct, however discriminatory or wrongful."  *Sullivan*, 526 U.S. at 50; *see Richard v.

Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003), *cert. denied*, 543 U.S.

917 (2004); *Richardson v. Fleming*, 651 F.2d 366, 371 (5th Cir. 1981).

Private action may be deemed state action for purposes of § 1983 only where the

challenged conduct may be "fairly attributable to the State."  *Lugar*, 457 U.S. at 937.  "'The mere

fact that a business is subject to state regulation does not by itself convert its action into that of the

State for purposes of the Fourteenth Amendment.'"  *Sullivan*, 526 U.S. at 52 (quoting *Jackson v.

Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974)).  When private conduct is involved, "state

action may be found if, though only if, there is such a 'close nexus between the State and the

challenged action' that seemingly private behavior 'may be fairly treated as that of the State

itself.'"  *Brentwood v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)

(quoting *Jackson*, 419 U.S. at 351).  "If a defendant's conduct satisfies the state-action

requirement of the Fourteenth Amendment, the conduct also constitutes action 'under color of state law' for § 1983 purposes." *Id.* at 295 n.2 (quoting *Lugar*, 457 U.S. at 935). The criteria for determining state action lack "rigid simplicity," and "no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." *Id.* at 295-96 (citing *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 193, 196 (1988); *Polk Cnty. v. Dodson*, 454 U.S. 312, 324-26 (1981)).

In ascertaining whether a private party should be characterized as a state actor, the Supreme Court "has articulated a number of different factors or tests in different contexts"—the "public function" test, the "state compulsion" test, the "nexus" test, and the "joint action" test. *Lugar*, 457 U.S. at 939; *see Richard*, 355 F.3d at 352; *Bass*, 180 F.3d at 241-42. A challenged activity may be state action "when it results from the State's exercise of 'coercive power,' when the State engages in 'significant encouragement, either overt or covert,' or when a private actor operates as 'a willful participant in joint activity with the State or its agents.'" *Brentwood*, 531 U.S. at 296 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Lugar*, 457 U.S. at 941); *accord Bass*, 180 F.3d at 241-42. State action can also occur when a "nominally private entity . . . is controlled by an 'agency of the State,'" or when it has been delegated a public function by the State. *Brentwood*, 531 U.S. at 296 (quoting *Pennsylvania v. Board of Dirs. of City Trusts of Phila.*, 353 U.S. 230, 231 (1957) (citing *West*, 487 U.S. at 56; *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 627-28 (1991))). In addition, state action may be found when a private entity is "'entwined with governmental policies' or when government is 'entwined in [its] management or control.'" *Id.* (quoting *Evans v. Newton*, 382 U.S. 296, 299, 301 (1966)). "[T]he

character of a legal entity is determined neither by its expressly private characterization in statutory law, nor by the failure of the law to acknowledge the entity's inseparability from recognized government officials or agencies." *Id.* (citing *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 393-94 (1995)). The Supreme Court has recognized that although an organization appears to be private, it may be an arm of the State through "winks and nods." *Id.* at 302 n.4 (stating that "if formalism were the sine qua non of state action, the doctrine would vanish owing to the ease and inevitability of evasion, and for just that reason formalism has never been controlling"). Nevertheless, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Sullivan*, 526 U.S. at 52 (citing *Blum*, 457 U.S. at 1004-05; *Flagg Bros., Inc.*, 436 U.S. at 154-65; *Jackson*, 419 U.S. at 357).

Here, Broughton makes several arguments as to why ITT should be considered a state actor. First, Broughton appears to assert that ITT is liable under the public function test, in which a private entity may be deemed a state actor when that entity performs a function that is traditionally the exclusive province of the State. *See Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989). Broughton claims that ITT "was acting under the color of the law in its role as a [sic] certifying Texas teachers." Broughton further contends that "the State has delegated the authority of certification to iteach, which has traditionally been an exclusive function of the state and therefore has created a symbiotic relationship with iteach." In his response to ITT's motion for summary judgment, Broughton reiterates this position by simply stating, "The public function is in the fact that 'Texas requires that all public school teachers be certified by the Texas Education Agency. The Texas Education Code allows a prospective teacher who does not meet the

requirements for regular certification to become certified under an alternative certification program.'"[6] Broughton's assertions do not support a claim under the public function test.

ITT disputes Broughton's contention that the State of Texas has delegated ITT the authority to certify prospective teachers. ITT maintains that it prepares, trains, evaluates, and recommends prospective teachers for certification, but points out that it does not have the authority to issue a teacher certification and, thus, does not perform a function that is traditionally the exclusive province of the State.

According to ITT's summary judgment evidence and the information posted on its website, ITT is a private alternative certification program that prepares teacher candidates for certification by SBEC. Section 228.40 of the Texas Administration Code states that the educator preparation program prepares the candidate "to receive the standard certificate" and determines "the readiness of each candidate to take the appropriate certification assessment of pedagogy and professional responsibilities, including professional ethics and standards of conduct." 19 TEX. ADMIN. CODE § 228.40. ITT, however, does not have the authority to issue a teacher certification; rather, the candidate must pass examinations required by the Texas Education Code and SBEC. *See* 19 TEX. ADMIN. CODE § 230.5 (citing TEX. EDUC. CODE ANN. § 21.048; 19 TEX. ADMIN. CODE § 233.1(e)). Only after these prerequisites are fulfilled does SBEC "issue appropriate certificates to qualified individuals who meet all requirements." 19 TEX. ADMIN. CODE § 230.431. Accordingly, Broughton's contentions are without merit, as ITT does not possess and does not exercise the authority to perform a role that has traditionally been reserved to the State. *See*

---

[6] The court notes that Broughton mistakenly cites to TEX. EDUC. CODE ANN. § 13.035 (Vernon 1991 & Supp. 1994). This section of the statute was repealed in 1995.

*Evans*, 382 U.S. at 299. Thus, ITT may not be considered a state actor under the public function test.

Next, Broughton appears to argue that state action exists pursuant to the nexus test, under which state action may be found where the government has "'so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the scheme.'" *Bass*, 180 F.3d at 242 (quoting *Jackson*, 419 U.S. at 357-58). He seeks to establish a nexus between ITT and the State by arguing that "the Alternative Certification Program is a creature of statute, regulated by statute and a licensed private *arm* of the TEA's 'State Board of Educator Certification.'" (emphasis in original). Broughton also claims that ITT's determination that the classroom was not the best career placement for him and its discussions with FBISD's human resources director were sanctioned by TEA. He fails, however, to identify any document, affidavit, deposition, or other evidence suggesting any participation by the State. He merely states, "clearly [ITT's] involvement in Broughton's certification process after [its] company's, Defendant's, February 12, 2007 decision to exclude Broughton from their ACP process was not only permitted but, judging from the comments of TEA's Kerri Elzie, authorized." This statement, even if accepted as true, does not demonstrate that ITT's actions were mandated or encouraged by the State.[7]

---

[7] Broughton's summary judgment evidence in support of this claim is almost non-existent. Counsel's arguments consist of what appear to be ostensibly unedited and spontaneous thoughts that lack any citations to the record. Furthermore, Local Rule CV-56(d) provides that "only relevant, cited-to excerpts of evidentiary materials should be attached to the motion or the response." To the contrary, Broughton attached entire depositions without any reference to page or line numbers. The court notes that "judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). The court declines to assume such porcine qualities in this instance.

Pursuant to the Texas Administration Code, "[p]reparation for the certification of educators may be delivered by an institution of higher education, regional education service center, public school district, or other entity approved by the State Board of Educator Certification (SBEC) under § 228.10 of this title (relating to Approval Process)." 19 Tex. Admin. Code § 228.20. ITT is approved by SBEC as an alternative educator preparation program. Section 227.10 of the Texas Administration Code provides that, for admission into an alternative certification program, "a candidate shall have a baccalaureate degree earned from and conferred by an institution of higher education that is recognized by one of the regional accrediting agencies . . . ." 19 Tex. Admin. Code § 227.10. The Texas Administration Code further delineates specific requirements for educator preparation programs, such as a minimum number of field-based hours of experience and test preparation. 19 Tex. Admin. Code § 228.35. Thus, it is clear that ITT, as an alternative educator preparation program, is regulated by statute.

As ITT correctly points out, however, a private business is not transformed into a state actor merely by statutory regulation. *See Blum*, 457 U.S. at 1004 (quoting *Jackson*, 419 U.S. at 350 (stating that "the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment")). Rather, constitutional standards may be invoked only "when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Id.* (emphasis in original). Such a factual context is absent here.

Despite Broughton's growing list of ITT's alleged wrongdoings, there is insufficient evidence to establish a nexus between the State and ITT's challenged actions. Specifically, there is no indication that ITT's decision to place Broughton on inactive status or to respond to an

inquiry regarding this decision received the imprimatur of the State so as to constitute "state action." Hence, Broughton cannot succeed in casting ITT as a state actor under the nexus test.

Furthermore, assuming *arguendo*, that Broughton could establish that ITT served as a state actor, his claim would still fail. For Broughton to recover under § 1983, he must also show that ITT deprived him of a right guaranteed by the Constitution or the laws of the United States. *See Daniels*, 474 U.S. at 329-31; *Baker*, 443 U.S. at 139; *Hernandez*, 380 F.3d at 879-80; *Victoria W.*, 369 F.3d at 482; *Rosborough v. Management & Training Corp.*, 350 F.3d 459, 460 (5th Cir. 2003). Broughton alleges that "Defendant iteach's actions have deprived Plaintiff of his right to obtain or seek gainful employment in public education." Broughton, however, fails to substantiate his contention that the ability to obtain or seek gainful employment in public education is a right guaranteed by the Constitution or the laws of the United States. Indeed, "Texas courts have held, as a matter of law, that a teacher working under a probationary contract does not have a cognizable property interest in continued employment." *Ibarra v. Houston Indep. Sch. Dist.*, 84 F. Supp. 2d 825, 831 (S.D. Tex. 1999) (citing *Carey v. Aldine Indep. Sch. Dist.*, 996 F. Supp. 641, 651 (S.D. Tex. 1998) (citing *McCullough v. Lohn*, 483 F.2d 34, 34 (5th Cir. 1973))); *see Nunez v. Simms*, 341 F.3d 385, 392 (5th Cir. 2003); *Montez v. South San Antonio Indep. Sch. Dist.*, 817 F.2d 1124, 1125-26 (5th Cir. 1987).[8] Accordingly, summary judgment is warranted on Broughton's § 1983 claim.

---

[8] Therefore, any claim for civil conspiracy must also fail because to prevail on a § 1983 conspiracy claim, the plaintiff must allege and prove: (1) an agreement between the defendant and others, involving at least one person acting under color of state law, to commit an illegal act and (2) an actual deprivation of the plaintiff's constitutional rights in furtherance of that agreement. *See Castellano v. Fragozo*, 311 F.3d 689, 702 (5th Cir. 2002), *rev'd on other grounds*, 352 F.3d 939 (5th Cir. 2003); *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990); *Lovoi v. FBI*, No. 99-3563, 2000 WL 33671769, at *2 (E.D. La. Mar. 31, 2000).

C.    Business Disparagement

In the instant action, Broughton also brings a claim for business disparagement against ITT. "A business disparagement claim is similar in many respects to a defamation action." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)). "The action for defamation is to protect the personal reputation of the injured party, whereas the action for injurious falsehood or business disparagement is to protect the economic interests of the injured party against pecuniary loss." *Fietz v. Southland Nat'l Ins. Co.*, 484 F. Supp. 2d 535, 550 (W.D. La. 2007) (citing *Hurlbut*, 749 S.W.2d at 766); *Forbes Inc.*, 124 S.W.3d at 170; *Newsom v. Brod*, 89 S.W.3d 732, 735 (Tex. App.—Houston [1st Dist.] 2002, no pet.). "The general elements of a claim for business disparagement are publication by the defendant of the disparaging words, falsity, malice, lack of privilege, and special damages." *Hurlbut*, 749 S.W.2d at 766; *accord C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 694 (5th Cir. 2001); *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1083 n.20 (5th Cir.), *cert. denied*, 522 U.S. 915 (1997); *Forbes Inc.*, 124 S.W.3d at 170; *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 82 (Tex. 2000).

Whether specific words or statements are disparaging is a question of law. *Granada Biosciences, Inc. v. Barrett*, 958 S.W.2d 215, 222 (Tex. App.—Amarillo 1997, pet. denied); *see United Way v. Helping Hands Lifeline Found.*, 949 S.W.2d 707, 713 (Tex. App.—San Antonio 1997, writ denied). The publication by the defendant must be, at a minimum, defamatory. *MKC Energy Inv., Inc. v. Sheldon*, 182 S.W.3d 371, 377 (Tex. App.—Beaumont 2005, no pet.) (citing *Granada Biosciences, Inc. v. Forbes Inc.*, 49 S.W.3d 610, 616 (Tex. App.—Houston [14th Dist.]

2001), *rev'd on other grounds*, 124 S.W.3d 167 (Tex. 2003)). "Restatement (Second) of Torts section 629 defines a disparaging statement as one that is understood to cast doubt upon the quality of another's land, chattels or intangible things, or upon the existence or extent of his property in them, and (a) the publisher intends the statement to cast doubt, or (b) the recipient's understanding of it as casting the doubt was reasonable." *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 504 n.4 (Nev. 2009) (citing RESTATEMENT (SECOND) OF TORTS § 629). "The statements alleged to be defamatory must be viewed in their context; they may be false, abusive, unpleasant, or objectionable to the plaintiff and still not be defamatory in light of the surrounding circumstances." *MKC Energy Inv., Inc.*, 182 S.W.3d at 377 (citing *San Antonio Express News v. Dracos*, 922 S.W.2d 242, 248 (Tex. App.—San Antonio 1996, no writ)).

Regarding falsity, "the common law presumed the defamatory statement to be false and truth was a defensive matter." *Hurlbut*, 749 S.W.2d at 766. In a business disparagement claim, however, the plaintiff must plead and prove the falsity of the statement as part of his cause of action. *Id*. "A statement that is true or substantially true cannot support a claim for either defamation or business disparagement." *Basic Capital Mgmt., Inc. v. Dow Jones & Co., Inc.*, 96 S.W.3d 475, 480-81 (Tex. App.—Austin 2002, no pet.) (citing *Hurlbut*, 749 S.W.2d at 766). Furthermore, as to fault, "a business disparagement defendant may be held liable 'only if he knew of the falsity or acted with reckless disregard concerning it, or if he acted with ill will or intended to interfere in the economic interest of the plaintiff in an unprivileged fashion.'" *Forbes Inc.*, 124 S.W.3d at 170 (quoting *Hurlbut*, 749 S.W.2d at 766 (quoting RESTATEMENT (SECOND) OF TORTS § 623A, cmt. g (1977))). Finally, regarding damages, "a plaintiff must provide evidence 'that the disparaging communication played a substantial part in inducing third parties not to deal with the

plaintiff, resulting in a direct pecuniary loss that has been realized or liquidated, such as specific lost sales, loss of trade, or loss of other dealings.'" *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 671 (S.D. Tex. 2010) (quoting *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 628 (Tex. App.—Fort Worth 2007, pet. denied)); *see Hurlbut*, 749 S.W.2d at 766.

In the case at bar, ITT's allegedly disparaging statements are contained in a letter dated February 12, 2007, to Broughton and copied to TEA and LISD.[9] The letter provides:

> Dear Andrew,
>
> In accordance with paragraph 11 of your Letter of Agreement, you have been placed on inactive status with the iteachTEXAS alternative certification program. When a resignation from a district such as yours occurs, iteachTEXAS determines that the classroom is not the best career placement for the candidate. Notice of your inactive status in our program will be provided to the Texas Education Agency.[10]

The letter, when read in whole, seeks to notify Broughton, TEA, and LISD that he has been placed on inactive status with ITT's alternative certification program. Broughton contends that the letter incorrectly states that he resigned, when, instead, "he remained employed" with LISD through the remainder of his 2006-2007 contract. He further argues, "the defendant's own

---

[9] The court agrees with Judge Heartfield's Memorandum and Order dated June 11, 2009, that Broughton's Original Complaint identifies only one publication—a letter from ITT to Broughton dated February 12, 2007. *See* Pl.'s Original Compl. 23. The letter states that it was sent by certified mail to Broughton and a copy was also provided to Mary Charlie of TEA and Mike Brooks of LISD.

[10] Paragraph 11 of the Letter of Agreement provides:

> The candidate agrees that his/her participation in the Program shall be "at will." Candidate participation in the Program is not a property right and nothing in this Agreement shall be construed to create a property interest. The Candidate understands that he/she may be dismissed from the Program at any time with or without cause and that he/she may withdraw from the Program at any time without cause.

words wrongly inferred that Broughton was sanctioned by loss of employment for inappropriate conduct when he wasn't, when he instead chose to take a leave which the LISD granted." Based on Broughton's argument, the court interprets the objectionable statement to be: "When a resignation from a district such as yours occurs, iteachTEXAS determines that the classroom is not the best career placement for the candidate."[11] ITT asserts that, at the time it was published, "every factual statement contained therein was true." ITT further maintains that Broughton has failed to prove that the statements were communications made without privilege or with malice. The court agrees.

It is Broughton's burden to plead and prove the falsity of ITT's statements. In other words, if the statements made by ITT are true or substantially true, his claim for business disparagement cannot survive. In his response to the motion for summary judgment, Broughton cites no evidence demonstrating the falsity of the statements; rather, he quibbles over the characterization of his departure and the semantic difference between a resignation and personal leave followed by a decision not to seek renewal of a contract. It appears that, according to Broughton, the accurate phrase would have been "when a *personal leave* from a district followed by a decision not to seek renewal of a contract such as yours occurs . . . ." ITT's use of the word

---

[11] In his response to ITT's motion for summary judgment, Broughton also states "it is established by Defendant's words that ITT wrongly represented that Broughton remained on administrative leave when he was on leave only during the investigation of student S.H.'s false claims, and then went on an understandable personal leave because of the target pinned to his back." To establish a cause of action for business disparagement, the specific words or statements must be identified in order to determine whether they are disparaging. *See Granada Biosciences, Inc.*, 958 S.W.2d at 222. Broughton fails to identify and provide evidence of the disparaging and false words and/or statements made by ITT regarding his placement on administrative leave and, thus, his claim in that respect cannot survive.

"resignation" in lieu of "personal leave" and additional commentary does not constitute a false or disparaging statement in this context.[12] In any event, the statement remains substantially true.

At deposition, Diann Huber ("Huber"), owner of ITT, stated that the correspondence was a form letter used to notify candidates of their inactive status in the program. When asked what she meant by the phrase "when a resignation from a district such as yours occurs," Huber stated, "it said he was no longer actively teaching in a classroom." Huber further explained that the statement meant "when an individual is not successful the first year, when they are not in a classroom where we can observe them, then possibly a career in the classroom is not the best option for them." Hence, from Huber's perspective, a resignation encompasses any act or decision that results in a candidate's subsequent absence from the classroom.

Moreover, the evidence Broughton provided the court indicates that Brooks considered Broughton's letter of non-renewal as sufficient to be considered a resignation. In an e-mail to Broughton's attorney dated February 7, 2007, Brooks states "a letter from Mr. Broughton worded that he will [not be] seeking renewal of his contract would be sufficient to be considered a *resignation* [and] will be proposed for acceptance as such to the Board." Brooks further writes, "If asked by future employers regarding the nature of his departure from LISD's employment, it will be Mr. Broughton's prerogative regarding the explanation given for this *resignation*." (emphasis added). From a practical standpoint, whether Broughton resigned or took personal

---

[12] "Resignation" is defined as "the act or an instance of surrendering or relinquishing an office, right, or claim." BLACK'S LAW DICTIONARY 1311 (7th ed. 1999). A resignation is not necessarily involuntary, as one usually resigns from an existing job in order to accept a more attractive offer. Indeed, it is often voluntary, just as Myers voluntarily resigned as superintendent from numerous school districts, including a resignation from Bridge City Independent School District during the middle of his contract. The court declines to interpret the word "resignation" to connote an implication of misconduct or inappropriate conduct tantamount to a "discharge."

leave without seeking renewal of his contract, the actions lead to an identical result—the surrender or relinquishment of Broughton's position. Therefore, there is insufficient evidence to support a finding that ITT's statements were disparaging or false.

Furthermore, Broughton must show actual malice on the part of ITT to establish a claim for business disparagement. In an effort to meet this standard, Broughton alleges that Huber "displayed in her words malice in the gloat as she recounted her conversation with FBISD to Elzie of TEA." Broughton, however, does not identify the specific words or statements made by Huber or explain how the words demonstrate that Huber knew her statements were false or that she acted with reckless disregard for the truth. Without evidence of malice, Broughton's claim for business disparagement fails.

Additionally, there is no evidence in the record of special damages. Broughton's complaint alleges merely that ITT's publication of the statement proximately caused him "to suffer damage, general and special." Without evidence of pecuniary loss, Broughton fails to establish the element of special damages required to support a claim of business disparagement. Accordingly, based on the foregoing reasons, summary judgment is warranted on Broughton's claim for business disparagement.

### D. Tortious Interference with Prospective Business Relations

Texas courts recognize actions for tortious interference with both existing and prospective contracts. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989); *Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied); *University of Texas-Pan Am. v. De Los Santos*, 997 S.W.2d 817, 821 (Tex. App.—Corpus Christi 1999, no pet.). "These two torts differ primarily in that

interference with prospective relations requires the plaintiff[] to prove both that [he] had a reasonable probability of obtaining a contract and that the defendant acted with malice." *Thrift v. Estate of Hubbard*, 44 F.3d 348, 357 (5th Cir. 1995); *see also Rimkus Consulting Grp., Inc.*, 688 F. Supp. 2d at 675 (citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 716-21, 725, 727 (Tex. 2001) (noting that the two torts are separate causes of action)). When attempting to prove an action for tortious interference with a prospective business relationship, however, it is unnecessary to prove the existence of a valid contract. *Winston v. American Med. Int'l, Inc.*, 930 S.W.2d 945, 953 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (citing *CF&I Steel v. Pete Sublett & Co.*, 623 S.W.2d 709, 715 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.)).

To establish a claim for tortious interference with prospective relations, the plaintiff must show:

    (1)    a reasonable probability that the plaintiff and a third party would have entered into a contractual relationship;

    (2)    that an independently tortious or wrongful act by the defendant prevented the relationship from occurring;

    (3)    that the defendant did act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of the conduct; and

    (4)    the plaintiff incurred actual harm or damage as a result of the defendant's interference.

*Astoria Indus. of Iowa, Inc.*, 223 S.W.3d at 633-34 (citing *Ash v. Hack Branch Distrib. Co., Inc.*, 54 S.W.3d 401, 413-14 (Tex. App.—Waco 2001, pet. denied); *Sturges*, 52 S.W.3d at 726; *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001); *Scott v. Galusha*, 890 S.W.2d 945, 951 (Tex. App.—Fort Worth 1994, writ denied)); *accord Cockerham v. Kerr-McGree Chem. Corp.*,

23 F.3d 101, 105 (5th Cir. 1994); *Rimkus Consulting Grp., Inc.*, 688 F. Supp. 2d at 675; *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 590 (Tex. App.—Austin 2007, pet. denied); *Winston*, 930 S.W.2d at 953. "The plaintiff must show that the defendant's conduct was either independently tortious or unlawful, that is, that the conduct violated some other recognized tort duty." *Rimkus Consulting Grp., Inc.*, 688 F. Supp. 2d at 675 (citing *Sturges*, 52 S.W.3d at 726; *Astoria Indus. of Iowa*, 223 S.W.3d at 632); *COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 679 (Tex. App.—Dallas 2004, pet. denied).

In the instant case, Broughton alleges that ITT "acted to tortiously interfere with Broughton's prospective relations with public school districts in violation of the law of the state of Texas." Broughton makes no mention of his cause of action for tortious interference in his response to ITT's motion for summary judgment. Thus, the court assumes that Broughton relies on the alleged business disparagement by ITT as the independently tortious act required for a claim of tortious interference with prospective business relations. As discussed above, Broughton's cause of action for business disparagement is without merit. Accordingly, without viable evidence of an independent tort, his claim for tortious interference with prospective business relations must also fail. *See BDO Seidman, LLP v. Alliantgroup, LP*, No. H-08-905, 2009 WL 1322555, at *13 (S.D. Tex. May 11, 2009).

III.    Conclusion

Based on the foregoing reasons, the court finds that Broughton has failed to present a claim that warrants relief. There remain no material facts in dispute, and ITT is entitled to judgment as a matter of law. Accordingly, ITT's motion for summary judgment is GRANTED.

SIGNED at Beaumont, Texas, this 29th day of July, 2010.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE