| | | |
|---|---|---|
| ANDREW BROUGHTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 9:08-CV-175 |
| | § | |
| LIVINGSTON INDEPENDENT SCHOOL | § | |
| DISTRICT, NIKKI WILSON, and | § | |
| iTEACH CORPORATION, INC., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendants Livingston Independent School District ("LISD") and Nikki Wilson's ("Wilson") (collectively, "Defendants") Motion for Summary Judgment (#59) and Plaintiff Andrew Broughton's ("Broughton") Motion to Strike Summary Judgment Evidence (#89). LISD and Wilson move for summary judgment as to Broughton's claims under 42 U.S.C. § 1983.[1] Broughton seeks to strike certain "student statements" submitted as summary judgment evidence by Defendants, arguing that the statements are irrelevant, prejudicial, and hearsay. Having reviewed the pending motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Defendants' motion should be GRANTED and Broughton's motion should be DENIED.

---

[1] Though Broughton originally asserted claims for denial of equal protection and retaliation, he expressly abandons those causes of action in his response to Defendants' motion. Morever, Broughton's civil conspiracy claim is waived, as he does not assert any legal argument as to civil conspiracy. *See Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) (stating that inadequately briefed issues are considered waived).

## I.  Background

On July 7, 2006, LISD hired Broughton as a teacher and coach at Livingston High School under a one-year probationary contract for the 2006-2007 school year.  Because Broughton was not certified by the State of Texas as a public school teacher, LISD requested that he show proof of enrollment in an alternative certification program as required by the State Board for Educator Certification ("SBEC").  Broughton contracted with iTeach Texas ("iTeach"), an alternative certification program, to assist him in obtaining certification.  As part of its program, iTeach provided instructional courses to Broughton and periodically sent a representative to observe and evaluate his classroom performance, which was consistently rated as average.

In January 2007, Broughton met with several superiors, including the school principal, assistant principal, and the LISD athletic director, to discuss concerns regarding Broughton's purported use of inappropriate language and tobacco on campus.  Broughton denied these allegations, and the meeting concluded with a warning that the use of inappropriate language or tobacco in the classroom could result in dismissal or non-renewal of Broughton's employment contract.  Five days later, a female student accused Broughton of physical misconduct of a sexual nature.  During its investigation of the student's allegations, LISD placed Broughton on administrative leave.  While the district was unable to corroborate the female student's allegations, several other students complained to school officials that Broughton had made inappropriate sexual comments and used profanity in the classroom.

Based upon the investigation, Mike Brooks ("Brooks"), the Human Resources Director for LISD, recommended to the LISD Board of Trustees that Broughton's employment be terminated.  Upon notice of his imminent termination, Broughton hired an attorney, Andy Smallwood

2

("Smallwood"), to represent him. Smallwood sent Brooks an e-mail proposing, *inter alia*, that Broughton would not seek renewal of his contract provided he remained on paid leave for the duration of the school year. Broughton also sought favorable references from the district and assurance that materials of "a derogative nature" would not be placed in his personnel file. Brooks responded by stating that "a letter from Mr. Broughton worded that he will not be seeking renewal of his contract would be sufficient to be considered a resignation and will be proposed for acceptance to the Board." Brooks further advised that a memorandum outlining the findings of LISD's investigation would be included in Broughton's personnel file, access to which was "explained in the Board policies."

Maintaining that the allegations against him lacked merit, Broughton nonetheless agreed not to seek renewal of his contract. To that end, he submitted a letter to Brooks in February 2007 stating, "Conditioned on my continued employment with all benefits through the remainder of the term of the Contract, I hereby give [LISD] notice that I will not be seeking renewal of the Contract for the subsequent school year (2007-2008)." Broughton claims that, in exchange for his not seeking to renew his contract,[2] LISD agreed not to disclose information regarding the circumstances of his departure to prospective employers (the "agreement"). Accordingly, Broughton did not work as an LISD coach or teacher for the remainder of the 2006-2007 school year, although he was paid his salary throughout the contract term.

---

[2] Broughton takes issue with the characterization of his separation from LISD as a "resignation," arguing that it is inconsistent with the language of his letter to Brooks and his other communication with LISD. Nonetheless, he refers to his departure from the district as a "resignation" in his response to Defendants' motion. Furthermore, whether Broughton resigned from LISD is not material to the instant claims and, therefore, has no bearing on Defendants' motion for summary judgment.

In July 2007, Broughton applied for a teaching position with Fort Bend Independent School District ("FBISD"), citing his interest in working close to home as his reason for leaving LISD. On his application, Broughton was asked whether he had ever "resigned in lieu of non-renewal or termination," to which he responded in the negative. Broughton's application also included a "Waiver of Rights," which stated:

> I authorize [FBISD] to investigate all statements contained herein, to investigate all information regarding my previous employment, and to contact all references listed on the application. I authorize any person or legal entity contacted by FBISD to release any information about me upon request of FBISD. I hereby release all parties providing information to FBISD from all liability for any damage that may result from furnishing that information.

FBISD later hired Broughton as a teacher and coach at Dulles High School on a one-year probationary contract for the 2007-2008 school year.

In August 2007, Mark Foust ("Foust"), principal of Dulles High School, called Wilson, who had replaced Brooks as LISD Director of Human Resources, to check Broughton's references. Wilson and Shelly Hullihen ("Hullihen"), LISD's Assistant Superintendent for Accountability, informed Foust, both over the telephone and, subsequently, via e-mail, that "due to the findings of an internal investigation, the [LISD] board recommended Mr. Broughton's removal from his teaching duties as of February 1, 2007, although he received compensation for the remainder of the contract."[3]

---

[3] Foust's reference request occurred on Wilson's first day of work at LISD. By her own admission, Wilson was, at the time of the request, unaware of the circumstances of Broughton's employment with the school district. Wilson relied upon Hullihen's recitation of Broughton's departure to respond to Foust's inquiry. Though Wilson informed Foust that the LISD board had recommended Broughton's termination, she later realized that it was a district administrator (Brooks) who had made the recommendation.

On September 10, 2007, Joel Trevino ("Trevino"), Director of Personnel for FBISD, informed Broughton that he had been placed on administrative leave by FBISD, pending an investigation into whether Broughton had provided false information on his employment application. Specifically, FBISD faulted Broughton for stating that he had never been asked to resign a teaching position, had never resigned in lieu of termination, and had never been suspended from any position. Broughton subsequently received a Notice of Proposed Termination informing him that the FBISD Board had voted to propose his termination for providing false information on his job application. Broughton contends that his termination was the direct result of Wilson's response to Foust's reference request, which was in violation of his agreement with LISD.

On September 21, 2008, Broughton filed this action against Defendants LISD, iTeach, Texas Education Agency ("TEA"), SBEC, Robert Scott ("Scott"), Darrel D. Myers ("Myers"), and Wilson, alleging that they had deprived him of "various constitutionally protected property and liberty interests without due process of law, procedural or substantive."[4]

On June 1, 2010, LISD and Wilson filed the instant motion seeking summary judgment on Broughton's claims and arguing that there is no evidence to support liability under § 1983. Specifically, Defendants assert that (1) Broughton cannot establish a due process or liberty interest violation; (2) Broughton released his claims against Defendants; (3) Broughton failed to identify a district policy that was the moving force behind his alleged constitutional violations; and (4) Wilson is entitled to qualified immunity.

---

[4] Since the filing of this action, iTeach, TEA, SBEC, Scott, and Myers have been dismissed as defendants.

II.    <u>Analysis</u>

As a preliminary matter, the court addresses several objections raised by the parties to documents submitted in support of and in opposition to Defendants' summary judgment motion. First, Broughton objects to certain student statements obtained during LISD's investigation of Broughton and submitted by Defendants in support of their motion as irrelevant, prejudicial, and hearsay. Evidence offered for or against summary judgment is "subject to the same standards and rules that govern the admissibility of evidence at trial." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 387-88 (5th Cir. 2009); *DirectTV, Inc. v. Budden*, 420 F.3d 521, 520 (5th Cir. 2005); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004) (citing *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995)).

"Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. "Relevance typically presents a low barrier to admissibility." *United States v. Van Metre*, 150 F.3d 339, 349 (4th Cir. 1998). Nonetheless, Federal Rule of Evidence 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403. Indeed, "[t]he touchstone for excluding evidence under [Rule] 403 is not prejudice, but *unfair* prejudice, which must substantially outweigh the probative value of the evidence." *Soll v. Provident Life & Acc. Ins. Co.*, No. Civ. A. 00-3670, 2002 WL 1461891, at *6 (E.D. La. July 5, 2002) (emphasis in original). As the United States Court of Appeals for the Fifth Circuit has observed, "the exclusion of evidence under Rule 403 should occur only sparingly." *Id.* (citing

*United States v. Pace*, 10 F.3d 1106, 1115-16 (5th Cir. 1993), *cert. denied*, 511 U.S. 1149 (1994)).

Here, the student statements tend to support Defendants' allegation that Broughton was placed on administrative leave as a result of his purportedly inappropriate behavior at LISD, a fact that is relevant to Broughton's liberty interest claims. Specifically, the statements bear on the accuracy of Defendants' comments to FBISD officials that Broughton was placed on leave due to allegations of improper conduct. Accordingly, the court finds that the student statements are relevant evidence as defined by Rule 401. Furthermore, the court finds that the potential prejudicial effect of the statements do not outweigh their probative value. Indeed, the court is certainly capable of discerning the evidentiary value of the statements in the context of Defendants' summary judgment motion without being swayed by any potential prejudice. Hence, the court finds that the student statements are not unfairly prejudicial to Broughton.

Finally, Broughton maintains that the statements should be excluded as hearsay pursuant to Federal Rule of Evidence 802. The statements, arguably, are not submitted for the truth of the matter asserted but merely to reflect what was reported to school officials about Broughton's conduct and the information LISD acted on when considering his termination. Therefore, they are not hearsay. FED. R. EVID. 801(c); *see Brauninger v. Motes*, 260 F. App'x 634, 636-37 (5th Cir. 2007) (holding that human resource manager's reports, which included witness statements, recording her investigation into complaints against a terminated employee were not hearsay where the "key issue [was] not whether the accusations [against the employee] were true but instead whether [the defendants] relied on them" in making the termination decision); *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1349 (5th Cir. 1985) (transcript of school board hearing was

admissible where admitted for the limited purpose of showing board's motivation for not renewing employee's contract); *John Doe I v. Roman Catholic Diocese of Galveston-Houston*, No. H-05-1047, 2007 WL 2817999, at *9 (S.D. Tex. Sept. 26, 2007) (admitting deposition testimony referencing Child Protective Services investigation reports and reasoning that the testimony was not proffered to show the truth of the matter but to show the information the affiant had been given). In any event, to the extent the statements are offered for the truth of the matter, they qualify under the business records exception because, according to the uncontested affidavit of Wilson, they were (1) kept in the regular course of business; (2) made by persons with personal knowledge of the matter recorded (the students); and (3) made at or near the time of the matter recorded. Furthermore, it was the regular practice of LISD to include such information in a record. *See* FED. R. EVID. 803(6); *Brauninger,* 260 F. App'x at 637 (opining that to the extent human resource manager's investigatory materials contained hearsay, they were nonetheless admissible under business records exception because investigation and documentation of sexual harassment allegations "are ordinary business practices and regular parts of" the duties of a human resource manager); *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 481 n.7 (5th Cir. 2002) (finding that human resource manager's notes regarding sexual harassment investigation were admissible business records). Therefore, Broughton's motion to strike the student statements is DENIED.

Second, Defendants object to the verification of Broughton's attorney, Larry Watts ("Watts"), and, presumably, the attached documents, on the grounds that (1) the verification is not based on personal knowledge and (2) Watts was not identified as a person with knowledge of relevant facts in Broughton's Initial Disclosures. For a document to be considered in support of or in opposition to a motion for summary judgment, "it must be authenticated by and attached to

an affidavit that meets the requirements of [Federal Rule of Civil Procedure] 56(e), and the affiant must be a person through whom the exhibits could be admitted into evidence." *Perez v. Alcoa Fujikura, Ltd.*, 969 F. Supp. 991, 997 (W.D. Tex. 1997); *see United States ex rel. Ramadoss v. Caremark, Inc.*, 586 F. Supp. 2d 668, 709 (W.D. Tex. 2008). In summary judgment proceedings under both federal and state law:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

FED. R. CIV. P. 56(e); TEX. R. CIV. P. 166a(f); *see Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003) ("Rule 56(e) requires statements in affidavits to be based on personal knowledge and not based on information and belief."). While an affiant's personal knowledge is required for competent summary judgment evidence, no "magic words" are needed to satisfy this requirement. *DirectTV, Inc.*, 420 F.3d at 529-30. Personal knowledge may be reasonably inferred from "the nature of [the affiant's] participation in the matters to which [he] swore." *Id*. Affidavits that do not comply with the personal knowledge requirement are legally insufficient and are entitled to no weight. *See Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 375 (5th Cir. 2007) ("Affidavits asserting facts based on information and belief alone are not sufficient to resist summary judgment); *Akin v. Q-L Invs., Inc.,* 959 F.2d 521, 530 (5th Cir. 1992) ("[A] court may strike any affidavit that is not based on personal knowledge."); *Bright v. Ashcroft*, 259 F. Supp. 2d 494, 498 (E.D. La. 2003) (opining that affidavits not based on personal knowledge are not competent summary judgment evidence).

Attached to Watts's verification are the following documents: (1) an e-mail exchange between Kerri Elzie of the TEA and Diann Huber of iTeach discussing the allegations against

Broughton; (2) a letter from Myers to SBEC informing the agency of LISD's investigation into Broughton and his removal from teaching duties; (3) an e-mail from Smallwood to Myers regarding "potential damage" to Broughton as a result of "LISD's wrongful actions;" (4) a letter from Smallwood to Myers detailing the alleged "wrongful actions" of LISD; (5) a letter from Wayne Haglund ("Haglund"), counsel for LISD, to Smallwood and Broughton informing them that LISD received a public information request from FBISD for Broughton's employee records; (6) a letter from Wilson responding to the information request and purportedly forwarding certain materials; (7) an e-mail exchange between Broughton and Brooks regarding the agreement; (8) an e-mail exchange between Brooks and Wilson discussing Broughton's resignation; (9) an e-mail from Watts to Haglund alleging a violation of the agreement between LISD and Broughton; and (10) letters exchanged between Watts and Haglund regarding the availability of a due process hearing.  Defendants are correct that Watts lacks personal knowledge of many of the documents attached to his verification.  Specifically, Watts fails to set forth any predicate to establish he had personal knowledge of items one through eight above, all of which originated before he was involved in this case.  Accordingly, these documents are not competent summary judgment evidence and will not be considered by the court.  The court finds, however, that Watts has personal knowledge of his correspondence with Haglund.

A.     Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  The parties seeking summary

judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). Where a defendant moves for summary judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion, "evidence must be adduced supporting each element of the defense and demonstrating the lack of any genuine issue of material fact with regard thereto." *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002); *see Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). To warrant judgment in its favor, the movant "'"must establish beyond peradventure *all* of the essential elements of the defense."'" *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (emphasis in original) (quoting *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot*, 780 F.2d at 1194)); *accord Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010).

"A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005); *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in

original).  Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *accord Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. American Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454.  The moving parties, however, need not negate the elements of the nonmovant's case.  *See Bayle*, 615 F.3d at 355; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Bayle*, 615 F.3d at 355; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004).  "[T]he court must review the record 'taken as a whole.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005).  All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility.  *Reeves*, 530 U.S. at 150; *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009); *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith*, 391 F.3d at 624; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).  The evidence of the nonmovant is to be believed, with all

justifiable inferences drawn and all reasonable doubts resolved in his favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009); *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004); *Martin*, 353 F.3d at 412. The evidence is construed "'in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).

Nevertheless, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)). "If the nonmoving party's theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007); *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541; *accord RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *Hugh Symons Grp., plc v. Motorola,*

*Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B.     Violation of Section 1983

In his Original Complaint, Broughton asserts that "Defendants, official and individual, acting under color of state law . . . have deprived Broughton of various constitutionally protected property and liberty interests without due process of law, procedural or substantive." He contends that LISD and Wilson have prevented Broughton "from obtaining gainful employment as a school teacher or instructor/coach of children in any instructional capacity with children" and "acted to arbitrarily and capriciously deprive Broughton of his protected interests without prior due process." Broughton's complaint fails to specify the statute under which he is pursuing his claim; however, it is clear from his response to Defendants' motion for summary judgment that he is alleging violations of 42 U.S.C. § 1983.[5]

_____

[5] Judge Thad Heartfield, who presided over this case before it was transferred to the undersigned judge, previously found that Broughton was pursuing claims under § 1983 when ruling on an earlier motion.

The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law. *See Inyo Cnty. v. Paiute-Shoshone Indians of the Bishop Cmty.*, 538 U.S. 701, 708 (2003); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994); *Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009); *Stotter v. University of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007); *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005). It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Southwestern Bell Tel., LP v. City of Houston,* 529 F.3d 257, 260 (5th Cir. 2008).

There are three elements to establish liability in a § 1983 action. *See Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citing *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986)). To prevail, the plaintiff must show "(1) a deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor." *Id.*; *see American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010); *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir.), *cert. denied*, 543 U.S. 829 (2004). A § 1983 complainant must support his claim with specific facts and may not simply rely on

conclusory allegations. *See Bryant*, 597 F.3d at 686; *Priester*, 354 F.3d at 420; *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). In the case at bar, Broughton alleges that Defendants violated his property and liberty interests without due process of law.

1.    Broughton's Asserted Property Interests

Broughton contends that Defendants have deprived him of "obtaining gainful employment as a school teacher or instructor/coach of children in any instructional capacity." Specifically, Broughton maintains that he possessed a cognizable property interest in the terms of TEX. EDUC. CODE § 21.006 and his purported agreement with Brooks regarding the terms of his departure from LISD.

As to his statutory argument, Broughton maintains that LISD deprived him of his property right in "the protections of [TEX. EDUC. CODE § 21.006]'s timeliness or time-bars, written notice, and reasonableness of the justifying conclusions of misconduct," when it failed to notify SBEC of the circumstances of his resignation within seven days, as required by the statute. *See* TEX. EDUC. CODE § 21.006. Defendants counter that § 21.006 of the Education Code does not give rise to any property interest, as it requires only that the district follow certain procedures related to an employee's resignation in lieu of termination.

As a threshold matter, Broughton must establish a property interest in continued employment before he is entitled to the protections of the Due Process Clause. *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006); *Muncy v. City of Dallas*, 335 F.3d 394, 398 n.1 (5th Cir. 2003); *Mullen v. City of Grenada*, 704 F. Supp. 2d 567, 572 (N.D. Miss. 2010). Texas courts have held as a matter of law that a teacher, such as Broughton, working under a probationary contract does not have a cognizable property interest in continued employment."

*Ibarra v. Houston Indep. Sch. Dist.*, 84 F. Supp. 2d 825, 831 (S.D. Tex. 1999) (citing *Carey v. Aldine Indep. Sch. Dist.*, 996 F. Supp. 641, 651 (S.D. Tex. 1998) (citing *McCullough v. Lohn*, 483 F.2d 34, 34 (5th Cir. 1973))); *see Nunez v. Simms*, 341 F.3d 385, 392 (5th Cir. 2003); *Montez v. South San Antonio Indep. Sch. Dist.*, 817 F.2d 1124, 1125-26 (5th Cir. 1987). Furthermore, "it is well established that the mere existence of procedures . . . does not in and of itself create a property right subject to federal due process requirements." *Scanlon v. Department of Mental Health*, 828 F. Supp. 421, 427 (S.D. Miss. 1993); *accord Town of Castle Rock v. Gonzales*, 545 U.S. 748, 771 (2005) ("[A] state [does not] create a property right merely by ordaining beneficial procedures unconnected to some articulable substantive guarantee.); *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983) ("The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right."); *Schreiber v. City of Garland*, No. 3:06-CV-1170-O, 2008 WL 1968310, at *5 (N.D. Tex. May 7, 2008) ("[J]ust because an ordinance or policy guarantees certain procedures . . . does not mean that there is necessarily a constitutionally protected property right.").

Here, there is no suggestion that the statutory procedures outlined in TEX. EDUC. CODE § 21.006 give rise to any property interest. Rather, they appear merely to require the district to follow certain notification procedures when a resignation following allegations of improper conduct with a student occurs. *See Giovanni v. Lynn*, 48 F.3d 908, 913 (5th Cir.), *cert. denied*, 516 U.S. 860 (1995) ("[A] state's failure to follow its own procedural regulations does not establish a violation of due process."); *Henderson v. Sotelo*, 761 F.2d 1093, 1097 (5th Cir. 1985) (holding that rather than granting a right to continued employment, city procedure "merely

[conditioned] an employee's removal on compliance with certain specified procedures"); *Cogdill v. Comal Indep. Sch. Dist.*, 630 F. Supp. 47, 49 (W.D. Tex. 1985) ("While the failure to comply with the state procedures [for nonrenewal of an employment contract] may be the basis for a state law claim, it cannot suffice to create a property interest."). Indeed, "'[p]roperty' cannot be defined by the procedures provided for its deprivation." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Therefore, Broughton cannot establish a property interest in the provisions of § 21.006 of the Texas Education Code.

Broughton also claims a cognizable property right in his purported agreement with Brooks that, in return for Broughton's assent not to seek renewal of his contract, the district would not disclose the circumstances surrounding his departure to future employers. While Broughton argues that he understood the e-mail exchange between Smallwood and Brooks to mean that the findings of the investigation would be "sealed," it is apparent from the evidence in this case that Brooks stated only that access to the file would be permitted in accordance with board policies. The LISD board policies state that "information in a personnel file, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," is exempt from public disclosure.[6] It is not necessary in this case, however, to determine whether the disclosure of Broughton's file would constitute such an invasion of privacy.

Assuming *arguendo* that a binding agreement arose from the communication between Brooks and Smallwood, the purported contract cannot be attributed to LISD because the district neither formally approved the contract nor delegated to Brooks, the HR director, the authority to enter into such agreements on its behalf. *See* TEX. EDUC. CODE § 11.1511(c)(4) ("The board may

---

[6] This provision is in accordance with TEX. GOV'T CODE § 552.101.

enter into contracts as authorized under this code or other law and delegate contractual authority to the superintendent as appropriate."); *see also* LISD Board Policy Manual, http://www.tasb.org/policy/pol/private/187907/ (requiring the superintendent to submit all district contracts to the board's legal counsel for review). Therefore, Broughton cannot demonstrate that the district deprived him of a property interest in the agreement. *See Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 438 (5th Cir. 2001) (no "mutual understanding" between doctors and hospital board regarding continued employment existed where doctors failed to show board reliance on the agreement); *Staheli v. University of Miss.*, 854 F.2d 121, 125 (5th Cir. 1988) (supervisor's comments that teacher was progressing toward tenure did not give rise to protected property interest where no evidence existed to show school had adopted the statements); *Stapp v. Avolyelles Parish Sch. Bd.*, 545 F.2d 527, 536 (5th Cir. 1977) (letter from parish superintendent was sufficient to create property right in continued employment when coupled with board reliance); *Moore v. Knowles*, 377 F. Supp. 302, 308 (N.D. Tex. 1974) (superintendent's statements to teacher that his contract would be renewed was not attributable to school board and, therefore, did not constitute an enforceable contract). Furthermore, even if the agreement were attributable to the school board, "a mere breach of contract will not suffice for an action under § 1983 without a violation of due process rights." *Whiting v. University of S. Miss.*, 451 F.3d 339, 345 (5th Cir. 2006) (citing *Bishop v. Wood*, 426 U.S. 341, 349-50 (1976)). Accordingly, summary judgment is warranted as to Broughton's property interest claims.

2.     Broughton's Asserted Liberty Interests

Broughton next argues that Wilson violated his liberty interest in his reputation when she informed Foust by telephone and e-mail of the district's investigation of Broughton and his

subsequent departure from teaching.[7]  Defendants claim that no deprivation occurred because, *inter alia*, Wilson's statements were true and, assuming a deprivation did occur, Broughton failed to pursue a name-clearing hearing.

"A party does not have a liberty interest in his reputation protected by the Fourteenth Amendment unless he can establish that the government employer's charges against him rise to such a level that they create a 'badge of infamy' which destroys the claimant's ability to take advantage of other employment opportunities." *Evans v. City of Dallas*, 861 F.2d 846, 851 (5th Cir. 1988) (citing *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972)); *accord DePree v. Saunders*, 588 F.3d 282, 290 (5th Cir. 2009); *Nichols v. University of S. Miss.*, 669 F. Supp. 2d 684, 696 (S.D. Miss. 2009); *Gaskin v. Village of Pachuta*, 484 F. Supp. 2d 551, 556 (S.D. Miss. 2007).  The Fifth Circuit applies a "stigma plus" test to determine whether a § 1983 plaintiff has experienced deprivation of a liberty interest. *Tebo v. Tebo*, 550 F.3d 492, 503 (5th Cir. 2008) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 936 (5th Cir. 1995)).  "The necessary stigma consists of 'concrete, false factual assertions'" about the plaintiff. *Id.* (quoting *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995)).  Furthermore, the plaintiff must show the stigma was "published" by the government actor. *Id.*; *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006).  In the event of a constitutional deprivation, "the remedy mandated by the Due Process Clause of the Fourteenth Amendment is an 'opportunity to refute the stigmatizing charge,'" though it is not necessary that this opportunity occur prior to publication. *In re*

---

[7] Broughton also takes issue with certain unspecified statements by Hullihen, who also spoke with Foust.  Hullihen, however, is not a party to this action.  Moreover, Broughton has not cited any evidence regarding the content of Hullihen's allegedly objectionable statements, save that Hullihen confirmed Broughton's employment with LISD during the 2006-2007 school year.

*Selcraig*, 705 F.2d 789, 796 (5th Cir. 1983) (quoting *Codd v. Velger*, 429 U.S. 624, 627 (1977)); *see Whiting*, 451 F.3d at 347.

As to the telephone call and e-mail between Wilson and Foust, Broughton's false stigmatization claim fails because he is unable to show the existence of a stigma. Specifically, Broughton has produced no evidence that the statements made by Wilson were false. *See Bledsoe*, 449 F.3d at 653 (noting plaintiff's burden to show stigmatizing charges were false); *Nichols*, 669 F. Supp. 2d at 696 (stating that plaintiff must prove falsity of defendant's statement); *Thinkstream, Inc. v. Adams*, No. Civ. A. 05-844JJB CN, 2006 WL 2583319, at *5 (M.D. La. Aug. 28, 2006) (recognizing plaintiff's burden to show stigma was caused by false communication); *Hill v. Silsbee Indep. Sch. Dist.*, 933 F. Supp. 616, 626 (E.D. Tex. 1996) (granting summary judgment where plaintiff made no allegation stigmatizing charges were false). Although Broughton takes issue with Wilson's statement that "[d]ue to the findings of an internal investigation, the Board recommended the removal of Mr. Broughton of [sic] his teaching duties . . . although he received compensation for the remainder of the contract," Broughton's own recitation of the facts of this case supports this characterization of the circumstances of his departure. Broughton contends that LISD placed him on administrative leave while conducting an investigation into allegations of inappropriate conduct. According to Broughton, Brooks subsequently informed Broughton that he would be pursuing termination of his contract. In response, Broughton advised LISD that he did not intend to seek renewal of his contract and was paid for the remainder of his current contract term, although he did not return to the classroom. Therefore, Broughton cannot show Wilson made any "concrete, false factual assertions" about him. *Tebo*, 550 F.3d at 503. While Broughton argues that Wilson's statement was false because she told Foust that "the Board," rather than Brooks,

recommended Broughton's termination, this discrepancy is not sufficiently material to elevate Wilson's statement to a false assertion as required by the stigma-plus test. At most, it is a seemingly inconsequential misstatement on the part of Wilson that has no bearing on the overall truth of her comments.[8] The fact remains that Broughton did not resume his teaching duties with LISD as a result of the findings of an internal investigation. Therefore, because there is no genuine issue of material fact as to the truth of Wilson's comments, Broughton fails to establish the deprivation of a liberty interest on a theory of false stigmatization.

Broughton also contends that Wilson "read Broughton's confidential file to FBISD's Trevino and wrongly told Trevino that the facts of the 'touching incident' . . . were true." He presents no competent summary judgment evidence, however, in support of this assertion. The sole evidence Broughton cites regarding Wilson's telephone conversation with Trevino is a purported letter to Myers from Smallwood, Broughton's prior attorney. As discussed previously, this letter is not competent summary judgment evidence and will not be considered by the court. In the absence of any additional evidence, summary judgment is appropriate on Broughton's false stigmatization claim because he has failed to establish the existence of an element essential to his case on which he bears the burden of proof at trial; namely, that Wilson made allegedly false statements about Broughton to Trevino. *See Nebraska*, 507 U.S. at 590; *Cutrera*, 429 F.3d at 110.

In any event, Broughton's false stigmatization claims fail because Broughton was provided due process. When charges against a public employee are disclosed, "the process due such an

---

[8] In fact, Defendants claim Broughton deprived Wilson of the opportunity to clarify her deposition testimony that her statement to Foust was "untrue" by cancelling the scheduled continuation of her deposition, an assertion Broughton does not deny.

individual is merely a hearing providing a public forum or opportunity to clear one's name." *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000); *accord Perez v. Housing Auth. of City of Uvalde*, 95 F. App'x 51, 55-56 (5th Cir. 2004). Under controlling precedent, a party complaining of a lack of due process is required to utilize available internal grievance procedures before proceeding in court under § 1983. *See Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 519 (5th Cir. 1998) (holding that the plaintiff cannot complain that "her due process rights were violated when she skipped an available state remedy"); *Browning v. City of Odessa*, 990 F.2d 842, 845 n.7 (5th Cir. 1993) (recognizing that the court "has consistently held that one who fails to take advantage of procedural safeguards available to him cannot later claim that he was denied due process"); *Rathjen v. Litchfield*, 878 F.2d 836, 839-40 (5th Cir. 1989) ("no denial of procedural due process occurs when a person has failed to utilize the state procedures available to him"); *Galloway v. Louisiana*, 817 F.2d 1154, 1158 (5th Cir. 1987) ("[a]n employee cannot ignore the process duly extended to him and later complain that he was not accorded due process"); *Myrick v. City of Dallas*, 810 F.2d 1382, 1388 (5th Cir. 1987) (no procedural due process violation where city employee failed to appeal her termination hearing decision as allowed by law). As aptly stated by the Fifth Circuit, "[the plaintiff] cannot skip an available state remedy and then argue that the deprivation by the state was the inadequacy or lack of the skipped remedy." *Id*. at 1388.

Here, Broughton originally requested a name-clearing hearing in front of the LISD board, but he failed to follow through on his request. Specifically, Watts wrote to Haglund on October 12, 2007, and November 7, 2007, requesting a due process hearing to discuss "the serious injustice which [the] district and some of its personnel have done to Mr. Broughton." Haglund

replied on November 9, 2007, requesting "specific facts supporting [Watts's] suggestion that a serious injustice has been done to Mr. Broughton" and advising that a name-clearing hearing would "be scheduled as soon as [he] received [Watts's] response providing the specific facts underlying this request." On November 11, 2007, Watts sent Haglund a lengthy response informing him of Broughton's various allegations and asserting that Broughton "possessed constitutionally protected property and liberty interests of which he has been deprived by LISD . . . without process." Haglund followed up on November 21, 2007, requesting that Watts "specify the property and/or liberty interests implicated" in his request. Haglund further informed Watts that he would "find a date or dates which will fit your schedule for the scheduling of this process" upon receiving the requested information. Watts never responded to Haglund's last inquiry.

Broughton's lack of response to Haglund's final letter is tantamount to a failure to request a name-clearing hearing at the outset and is fatal to his liberty interest claim. *See Bledsoe*, 449 F.3d at 654 ("Bledsoe's undisputed failure to request a hearing defeats his liberty interest claim"); *Perez*, 95 F. App'x at 56 (holding that where plaintiff failed to request a name-clearing hearing, no due process deprivation occurred); *Waris v. Harris Cnty.*, No. H-06-1331, 2007 WL 4377828, at *11 n.76 (S.D. Tex. 2007 Dec. 12, 2007) (granting summary judgment where plaintiff requested name-clearing hearing but failed to appear); *Vines v. City of Dallas*, 851 F. Supp. 254, 258 (N.D. Tex. 1994) ("the law is clear that a name-clearing hearing must have been requested by plaintiff to sustain a § 1983 claim for deprivation of a liberty interest"). Hence, even if Broughton were successful in alleging a deprivation of his liberty interest, he was provided the

opportunity to schedule—but failed to pursue—a name-clearing hearing. Summary judgment is

therefore appropriate on Broughton's liberty interest claims.

### 3. Broughton's Asserted Interest in TEX. GOV'T CODE § 552.102(a)

Broughton also alleges, without citing any authority, that Defendants violated his

"protected right" in Tex. Gov't Code § 552.102(a). Specifically, Broughton asserts the following:

> Broughton had a protected right, whether property or liberty, to have at least the
> unsubstantiated statements which Defendants in this action voluntarily offered
> under seal maintain undisclosed to the FBISD's "[Freedom of Information Act]"
> request—if indeed there was such a request. Broughton also had at least the
> opportunity to receive the statements from the investigation file before they were
> finally produced on March 24, 2010, during Myers's deposition. Broughton also
> had a reasonable opportunity to object to the disclosure of the "confidential file"
> containing the unsubstantiated allegations. When LISD's Haglund faxed his
> October 4, 2007, letter to Smallwood's office, announcing LISD's intent to produce
> on October 8, 2010 [sic], and Wilson simultaneously produced the non-disclosable
> documents to FBISD, it was a clear deprivation of a protected interest, whether a
> statutory property or liberty interest in privacy.

While Broughton argues that he has sustained "a clear deprivation of a protected interest"

at the hands of Defendants, it is uncertain in what, precisely, Broughton claims to have a protected

interest. TEX. GOV'T CODE § 552.102(a) provides that "information in a personnel file, the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy" is

exempt from public disclosure. Therefore, Broughton appears to argue that his "protected

interest" was violated when Wilson allegedly forwarded the contents of his personnel file to

FBISD.[9] The court finds no authority to suggest that Broughton possessed any kind of property

---

[9] Broughton's complaint that he was unable to access the "statements from the investigation file"
prior to Myers's deposition is properly characterized as a discovery dispute rather than a constitutional
violation and, therefore, will not be considered by the court at this juncture.

interest in the provisions of TEX. GOV'T CODE § 552.102(a).[10] Therefore, Broughton's purported interest in the statute is more properly construed as a privacy interest in the contents of his personnel file.

"There is no specific 'right to privacy' in the Constitution, but the Supreme Court has recognized 'zones of privacy' that impose limits on governmental powers." *Mullen*, 704 F. Supp. 2d at 573 (quoting *Roe v. Wade*, 410 U.S. 113, 152-53 (1973)). One such zone is one's "individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). While the "Fifth Circuit has not adopted a test to determine if the information disclosed is of such a personal nature as to give rise to a cause of action," only the "most intimate details of one's life or the most harmful type of statements can make such a disclosure a violation of one's constitutional rights." *Mullen*, 704 F. Supp. 2d at 573-74 (citing *Zaffuto v. City of Hammond*, 308 F.3d 485, 490 (5th Cir. 2002)). The information at issue here—allegations that Broughton engaged in sexually explicit or other improper conduct with students—is the type of information that is protected. *See American Civil Liberties Union of Miss., Inc. v. State of Miss.*, 911 F.2d 1066, 1070 (5th Cir. 1990) (finding privacy interest in unsubstantiated allegations of homosexuality, child molestation, and sexual promiscuity). Nonetheless, "public employer intrusions on the constitutionally protected privacy interests of government employees for non-investigatory, work-related purposes . . . should be judged by the standard of reasonableness under all the circumstances," and the court must weigh the intrusion on the plaintiff's privacy

---

[10] Indeed, one's "property" generally includes only his "proprietary as opposed to his personal rights." BLACKS LAW DICTIONARY (9th ed. 2009). "The former constitute his estate or property, while the latter constitute his status or personal condition. In this sense a man's land, chattels, shares, and the debts due to him are his property; but not his life or liberty or reputation." *Id.*

against the government's interest in disclosure. *O'Connor v. Ortega*, 480 U.S. 709, 728 (1987); *see also Mullen*, 704 F. Supp. 2d at 574 (citing *National Treasury Emp. Union v. United States Dep't of Treasury*, 25 F.3d 237, 242-43 (5th Cir. 1994)); *Littlefield v. Forney Ind. Sch. Dist.*, 108 F. Supp. 2d 681, 696-97 (N.D. Tex. 2000) (quoting *American Civil Liberties Union of Miss., Inc.*, 911 F.2d at 1070).

Here, the details surrounding Broughton's suspension and subsequent departure from LISD were communicated by Wilson to a representative of FBISD who was considering hiring Broughton. The state's interest in disclosure in this instance is great. Indeed, a school district has a substantial interest in ensuring its educators are suitable individuals for the teaching profession. *See Aubrey v. School Bd. of Lafayette Parish*, 148 F.3d 559, 565 (5th Cir. 1998) (holding that school employees' interest in privacy of drug test results was outweighed by school board's interest in preventing drug users from obtaining "safety-sensitive" positions); *Knox Cnty. Educ. Ass'n v. Knox Cnty. Bd. of Educ.*, 158 F.3d 361, 379 (6th Cir. 1998), *cert. denied*, 528 U.S. 812 (1999) ("[T]eachers' legitimate expectation of privacy is diminished by their participation in a heavily regulated industry and by the nature of their job."); *Rivera v. Jones*, No. L-06-019, 2008 WL 4279628, at *6 (S.D. Tex. Sept. 11, 2008) ("[A] school district has a duty to maintain a safe school environment."); *Hackett v. Fulton Cnty. Sch. Dist.*, 238 F. Supp. 2d 1330, 1350 (N.D. Ga. 2002) ("A school district has a duty to protect its students from harassment by teachers."). If LISD had information, substantiated or not, that Broughton had engaged in inappropriate activity, the state's interest in that information, and in ensuring the suitability of its teachers, outweighed Broughton's privacy interest. *See Nieto v. San Perlita Indep. Sch. Dist.*, 894 F.2d 174, 179 (5th Cir. 1990) (stating that "even vague complaints that teachers are abusing students" can be

considered a matter of public concern); *Malleus v. George*, No. 10-1357, 2010 WL 3069669, at *4 (E.D. Pa. Aug. 5, 2010) (holding that school district's disclosure of its investigation into a teacher's inappropriate contact with a student was a matter of public concern and outweighed plaintiff's privacy interest in her statements made during the investigation); *Doe v. Methacton Sch. Dist.*, 878 F. Supp. 40, 43 (E.D. Pa. 1995) (opining that parents have an interest in learning whether school districts take allegations of teacher misconduct seriously); *Morales v. Ellen*, 840 S.W.2d 519, 525 (Tex. App.—El Paso 1992, writ denied) (finding that public interest in the disclosure of the results of an investigation into police chief's alleged misconduct outweighed his privacy interest in the information).  Therefore, summary judgment is appropriate on Broughton's privacy interest claim.

C.     Release of Claims

Assuming *arguendo* Broughton had successfully alleged a constitutional violation, summary judgment would nonetheless be appropriate because Broughton released Defendants from liability when he submitted his employment application to FBISD.  That application contained a "Waiver of Rights" paragraph that stated in relevant part:  "I authorize any person or legal entity contacted by FBISD to release any information about me upon the request of FBISD.  I hereby release all parties providing information to FBISD from all liability for any damage that may result from furnishing that information."

"Waiver is an intentional relinquishment or abandonment of a known right."  *Long v. Gonzales*, 420 F.3d 516, 520 (5th Cir. 2005) (citing *Kontrick v. Ryan*, 540 U.S. 443, 558, n.13 (2004)); *accord Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 313 (5th Cir. 2005); *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 608 (5th Cir. 2000).  "Waiver

involves the relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 660 (5th Cir. 1999). "[A] waiver must not only be voluntary but constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege." *Richardson v. Lucas*, 741 F.2d 753, 756 (5th Cir. 1984) (citing *Estelle v. Smith*, 451 U.S. 454, 471 n.16 (1981)).

"The release of federal claims is governed by federal law." *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994); *O'Hare v. Global Natural Res., Inc.,* 898 F.2d 1015, 1017 (5th Cir. 1990). Public policy favors voluntary settlement of claims and enforcement of releases. *Williams*, 23 F.3d at 935 (citing *Rogers v. General Elec. Co.*, 781 F.2d 452, 454 (5th Cir. 1986)). Nonetheless, waiver of federal remedial rights should not be lightly inferred. *Smith v. Amedisys Inc.*, 298 F.3d 434, 441 (5th Cir. 2002). "Unless a federal statute places specific requirements on waivers, the courts in [the Fifth Circuit] apply a totality of the circumstances analysis" to determine whether a waiver occurred. *Eddins v. Excelsior Indep. Sch. Dist.*, 88 F. Supp. 2d 695, 704 (E.D. Tex. 2000) (citing *Williams*, 23 F.3d at 935)). A party asserting waiver must establish that his opponent signed a release that addresses the claims at issue, received adequate consideration, and breached the release. *Chaplin*, 307 F.3d at 372; *Williams*, 23 F.3d at 935. The burden then shifts to the opponent to demonstrate that the release was invalid because of fraud, duress, material mistake, or some other defense. *Williams*, 23 F.3d at 935. Broughton argues that there is a genuine issue of material fact as to whether he intended to release LISD and Wilson from liability and whether he received adequate consideration for the waiver.

The court finds that Broughton released his claims against Defendants. The facts of this case are similar to those in *Purdy v. City of Kalamazoo*, No. 1:07-CV-316, 2008 WL 2714233,

at *1 (W.D. Mich. July 7, 2008). In that case, the plaintiff, David Purdy, resigned from his job as deputy chief of police with the City of Kalamazoo Department of Public Safety ("DPS") in lieu of discipline after he received a negative employment evaluation from his supervisor. *Id*. at *1. Purdy subsequently secured a position as police chief in a neighboring city, pending approval of a background check by the International Association of Chiefs of Police ("IACP"). *Id*. After a Freedom of Information Act request by IACP revealed Purdy's negative evaluation from the Kalamazoo DPS, Purdy's job offer was withdrawn, and he sued the city of Kalamazoo for retaliation under Title VII. *Id*. The court granted summary judgment for the city, finding that Purdy waived his claims when he signed a release form authorizing the receipt of his personnel information from the Kalamazoo DPS. That waiver stated in relevant part:

> I authorize the IACP to contact individuals and institutions that may have information relevant to my qualifications for the job for which I am applying. I further authorize contacted individuals and institutions to give IACP any and all information concerning my previous employment or any other pertinent information they may have . . . and release all parties from all liability for any damage that may result from furnishing such information.

*Id*. at *2. The court found, based on the broad language of the release, that Purdy had released both IACP and any party who supplied the agency with information from "any liability for any potential claims." *Id*. at *6. Specifically, because Purdy's federal retaliation claims were based on the release of negative information to the IACP and Purdy's resulting failure to obtain employment, the court concluded that all of his claims were covered by the release. *Id*.

Here, Broughton signed a release authorizing "any person or legal entity contacted by FBISD to release any information about me upon the request of FBISD" and releasing "all parties providing information to FBISD from all liability for any damage that may result from furnishing that information." This language mirrors that which the *Purdy* court found to be a full and

30

complete release of all of the plaintiff's claims. *Id.* at *1. Furthermore, Broughton's claims against Defendants, like Purdy's, are based on the release of information regarding the allegations made against him and his resulting failure to secure another position. Though Broughton maintains that fact issues exist as to whether he intended to release Defendants from liability, he points to no facts in the record to support that contention. To the contrary, Defendants have established that Broughton signed a release that covers the claims at issue. *See Chaplin*, 307 F.3d at 372 (holding that waiver of "any and all claims" revealed an intent to "cover every imaginable cause of action"); *Amedisys Inc.*, 298 F.3d at 441-42 (finding that release of "any and all employment claims" covered plaintiff's Title VII causes of action); *Sullivan v. AT&T, Inc.*, No. 3-08-CV-1089-M, 2010 WL 905567, at *3 (N.D. Tex. Mar. 12, 2010) (form releasing "any and all claims and rights" included plaintiff's ERISA claims). The record reflects that Broughton is an educated man. He holds a bachelor's degree in business administration from the University of Texas at Dallas and worked in various professional positions prior to pursuing a teaching career. Furthermore, having applied for teaching positions in the past, Broughton was aware of the application process and the likelihood that LISD would be contacted for a reference. Finally, the waiver language conspicuously appeared in Broughton's application under the heading "Waiver of Rights" written in bold type. Under these circumstances, it is apparent that Broughton's release was knowing and voluntary.

Broughton argues, again without pointing to any relevant facts or authority, that there is a genuine issue of material fact as to whether he received sufficient consideration for a release of liability. Courts have routinely held, however, that a prospective employer's acceptance of a job application is sufficient consideration to support agreements contained in that application. *Hadnot*

*v. Bay, Ltd.*, 344 F.3d 474, 477-78 (5th Cir. 2003); *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 368 (7th Cir. 1999); *Purdy*, 2008 WL 2714233, at *5; *Ford v. Lehman Bros., Inc.*, No. H-07-2693, 2007 WL 4437165, at *3 (S.D. Tex. Dec. 18, 2007); *Vincent v. Comerica Bank*, No. H-05-2302, 2006 WL 1295494, at *5-6 (S.D. Tex. May 10, 2006).  Accordingly, the court finds that Broughton's release was supported by sufficient consideration.  Furthermore, because he has sued Defendants for their role in releasing information regarding his employment history, Broughton breached the release.  Thus, the burden shifts to Broughton to demonstrate that the release was invalid because of fraud, duress, material mistake, or some other defense. *Williams*, 23 F.3d at 935.  As Broughton has presented no evidence of invalidity, the court finds that Defendants are entitled to judgment as a matter of law. *Williams*, 23 F.3d at 936 (holding that summary judgment on theory of waiver was appropriate where plaintiff produced no evidence of "fraud, duress, or other basis for holding the release invalid").

Therefore, Broughton's § 1983 claims fail because (1) he is unable to establish a constitutional deprivation at the hands of Defendants and (2) he released any and all claims in his FBISD job application.  Consequently, the court need not reach Defendant's remaining arguments in support of summary judgment; namely, that (1) Broughton failed to establish the elements of municipal liability and (2) Wilson is protected by qualified immunity.

III.    Conclusion

For the foregoing reasons, the court finds that Broughton has failed to present a claim that warrants relief.  There remain no material facts in dispute, and Defendants are entitled to judgment as a matter of law.  Accordingly, Defendants' motion for summary judgment is GRANTED.

SIGNED at Beaumont, Texas, this 3rd day of November, 2010.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE